Seymour *v.* Page.

DANIEL M. SEYMOUR *vs.* WILLIAM H. PAGE.

Where the proprietor of grounds, laid out for use as a public cemetery, makes a conveyance of a burial lot, no interest in the alleys which separate it from other lots, except a right of way, passes to the purchaser, unless particularly expressed in the deed; the presumption being of a reservation, rather than of a grant.

If the language of the deed is ambiguous upon this point, and the grantee claims title to these alleys, evidence is admissible of the custom in other cemeteries in the same town and elsewhere, respecting the control and care exercised by their respective proprietors over alleys and avenues, in order to remove the ambiguity.

Where such a grantee was informed by the proprietor, during the negotiations for the sale, that the alleys were intended for the benefit of holders of adjoining lots, and that, if one person purchased two or more adjoining lots, he could close up the alleys between them; but this was said with no intention to authorize the closing of alleys to the detriment of other owners or to convey an exclusive right in any alley without extra compensation therefor; and where the grantee, after the purchase, which was for the ordinary price, enriched and kept in order at his own expense for nine years that part of the alleys claimed by him, with the knowledge of his grantor and without his objection,—Held, that these facts did not estop the grantor from asserting his title, in defence of an action of trespass for disturbing the soil.

TRESPASS *quare clausum fregit*, with a count in case for the same cause of action, brought originally before a justice of the peace, and thence by appeal to the superior court, and there tried upon the general issue closed to the court with notice of special matter in justification. The court found the following facts :—

About the year 1845, Stephen Page, the father of the defendant, since deceased, established a cemetery in the city of Hartford, known as " Spring Grove Cemetery." The land therein was from time to time divided into small lots for burial purposes, with avenues of various widths and at suitable distances from each other, which lots and avenues were surveyed and properly graded, and a plan thereof prepared. These lots were sold, from time to time, for burial purposes only. On the 4th of April, 1855, the plaintiff bought lot No. 341, for the purposes and upon the terms and conditions specified in the deed, of which the following is a copy.

"Know all men by these presents that I, Stephen Page, of Hartford, in Hartford county, state of Connecticut, for the consideration of one hundred and eleven dollars, paid to me by Daniel M. Seymour, of said Hartford, do hereby grant, bargain, sell and convey to the said Seymour one certain lot of land, No. 341, on Center Avenue, measuring 34 by 42 feet, in section A, containing 1,428 superficial feet, in the cemetery called Spring Grove Cemetery, situated on the west side of Windsor road, in the town of Hartford, containing about eighteen acres ; and the said Stephen Page binds himself, his heirs and assigns, for ever, not to sell any part or parcel of the same for any other purpose. A plan of said cemetery is deposited in the town clerk's office in said Hartford, to which reference is made for the location of the lot hereby conveyed. To have and to hold the above granted premises to the said Seymour, his heirs and assigns for ever, for a burial place, and no other purpose. And I, the said Stephen Page, do hereby covenant to and with the said Seymour, his heirs and assigns, that I am lawfully seized of the above granted premises in fee-simple, and that I have a right to sell and convey the same for the purpose above expressed, that

the said premises are free from all incumbrance, and that I will warrant and defend the same unto the said Seymour, his heirs and assigns forever.    In testimony whereof, &c."

On either side of the lot was an alley five feet in width, running at right angles with Center Avenue, for the accommodation of other owners of lots in the rear.    The plaintiff's lot was separated from the one in the rear by a narrow alley two feet wide.    The plaintiff, soon after his purchase, inclosed his lot by a fence.    There are three entrances to the lot; one from Center Avenue, and one on each side from the wide alleys..    The defendant and Stephen B. Page are now the owners of the cemetery, subject to such rights as the owners of lots have acquired therein by virtue of their respective deeds.    A part of the ground is not yet laid out in lots, but it is being done, from time to time, as the wants of the public require.    The avenues and unoccupied ground, and in the main the alleys, were kept in order by Stephen Page during his lifetime, and have been by the defendant since his decease.    In some instances however the alleys have been kept in repair by the owners of the adjoining lots.    The plaintiff, after the purchase of his lot and with the knowledge of Stephen Page and the defendant, and without objection on their part, enriched the soil in the alleys adjoining his lot, causing the grass to grow thereon, and so continued to care for and manage these alleys until the acts complained of were committed by the defendant.    The court also found upon evidence offered by the plaintiff, and objected to by the defendant, but received subject to the objection, that Stephen Page, at the time of or before the execution and delivery of the deed, and during the negotiations therefor, informed the plaintiff that the alleys were intended for the benefit of the adjoining proprietors, and that if the same party purchased two or more adjoining lots, the alleys separating them could be closed up by the purchaser; but he did not intend thereby to authorize the closing up of the five feet alleys to the detriment of other owners, nor to convey to the purchaser an exclusive right in any alley without extra compensation therefor.    The court also found, upon evidence offered by the

defendant and objected to by the plaintiff, and received subject to the objection, that it was customary for the proprietors of cemeteries, not only in Hartford and vicinity but in other places out of this state, to have the exclusive control and care of the avenues and alleys in their respective cemeteries.

In November, 1863, the defendant, for the purpose of making a gravel walk in a suitable manner, cut up and removed the turf from the five-feet alleys adjoining the plaintiff's lot, and used it for turfing other lots, but without any other benefit or advantage to the defendant. These acts of the defendant did not interfere with the plaintiff's enclosure, nor disturb the plaintiff in the exercise of his right of burial therein. If the plaintiff had title to the alley, or any part thereof, beyond a mere right of way over the same, the court assessed the damages sustained by him by the acts of the defendant at ten dollars.

Upon this finding the questions upon the admissibility of the evidence objected to, and the judgment to be rendered upon the facts in the case, were reserved for the advice of this court.

*Goodman,* for the plaintiff.

*Chamberlin,* with whom was *N. Shipman,* contra.

McCurdy, J. In this case the alleged trespass consisted in changing a grass-walk into a suitable gravel one in the alleys of a cemetery. Which kind is preferable is a matter of taste, and the dispute is who had the right to exercise it.

The plaintiff owns a qualified fee in the adjacent lot and claims that his title extends to the middle of the alleys, in analogy to the right of an owner of land bounded by a highway. But the cases are so unlike that the well-settled rules of law which govern one are not applicable to the other. The controlling principle in both is the intention of the parties. In the sale of land bordering on a road, it would be absurd to suppose the parties to have meant that the seller should reserve to himself and his heirs and assigns, forever,

a narrow strip in front of the tract sold, which would ordinarily be of no benefit to him, but a perpetual injury and annoyance to the purchaser.    In the absence of any express reservations or what is equivalent, the law, from motives of policy, presumes that the intention is to convey the whole interest. If, however, it appears from the language of the deed, or the object in view, or the circumstances of the case, that a limitation was meant, the presumption is controlled.    *Peck* v. *Smith*, 1 Conn., 103.

Applying this test we are satisfied that the grant to the plaintiff does not include the fee of the alleys.    The description in the deed is very exact.    " A certain lot, No. 341, on Central Avenue, 34 by 42 feet, containing 1,428 superficial feet, in section A, of the Spring Grove Cemetery, &c."    No reference is made to the alleys, unless it be inferentially, inasmuch as the plan is referred to on which they are marked. So far therefore as appears on the face of the instrument, nothing passes beyond the limits so minutely defined.    If any further right was acquired, it must be on the principle of construction, to which we have alluded.    But, as heretofore stated, there is little or no resemblance between the conditions of a highway and a cemetery, and in the latter the presumption is of a reservation rather than of a grant.

There is perhaps no purpose to which wealth and art can be more properly appropriated than to embellishing the anticipated homes of the living, the cities of the dead.    Beautiful creations of taste and genius relieve the external gloom, and soften the repulsive associations of the grave.    In the preparation of a cemetery great skill and experience are required in preserving and adding to the natural advantages of localities, in grading, fencing, arranging walks, alleys, avenues and squares, and in planting and protecting trees, shrubbery, &c.; and it is absolutely necessary, in order to insure regularity, permanence, and progress, that these improvements should be under the control of one authority, acting in pursuance of matured and harmonious design.    The very nature of the case excludes the supposition that each of the hundreds of individuals owning a mere right of burying in a particular spot, can

go beyond his specified limits and derange this system, substituting deformity for beauty, as his own bad taste or temper may suggest, and this too by construction of law. The proprietor of a lot adjacent to an artificial lake or fountain would hardly claim title to the center of the water, with a right to use or drain it at his pleasure.

The object of what is called " construction of law·" is to explain the meaning of parties, or to do justice between them, or to conserve some public policy. A grant is construed to imply whatever is necessary to the enjoyment of the principal thing granted. In this case there was no necessity for the use of the alleys, as the lot was perfectly accessible from the avenues. Besides, it is found that the side alleys are for the accommodation of other owners of lots in the rear. So far as the plaintiff has a right to use them at all, it is in common with the others, and there is nothing to indicate, but everything to disprove, that he owns them in fee. The control of the aisles in a church pertains to the society and not to the holder of pews. *Darnel* v. *Wood*, 1 Pick., 102, and notes.

In respect to the evidence of usage or custom, presented by the defendant, we see no objection to its admission, although it would seem to be uncalled for.

The defendant's father, in whose place he stands, had appropriated a large tract of land for an ornamental cemetery. He had laid it out in modern style and bound himself not to sell any part of it for other purposes. He had granted the lot in question for a burying place and for no other use. Now what is the import of all this ? What were the rights and duties of the parties? As we have seen, much was to be done, and that continually, to maintain and extend the improvements, to preserve the walks and avenues and squares from nuisance and obstructions, and to render the grounds as attractive as their character would admit. Who is to do this ?

To remove any ambiguity on this point, the custom in other similar places, especially in those of Hartford, was clearly admissible. In the case of *The Schooner Reeside*, 2 Sumner, 567, Judge Story lays down the rule. " The true and appropriate office of a usage or custom is to interpret the

otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions and acts of a doubtful or equivocal character."

The case is not varied by the fact that the defendant had allowed the plaintiff to do certain acts in the alleys in question, it being found that the defendant kept in order the avenues and unoccupied grounds, and in the main the alleys of the cemetery. Nor is it material that the defendant made the declarations stated in the motion, taken with the meaning attached to them as found by the court.

We advise judgment for the defendant.

In this opinion the other judges concurred.