THE MOUNT HOPE CEMETERY ASSOCIATION, Appellant, *vs.*
THE NEW MOUNT HOPE CEMETERY ASSOCIATION *et al.*
Appellees.

*Opinion filed October 28, 1910.*

1. INJUNCTION—*when a court of equity may enjoin repetition of trespasses.* A court of equity may enjoin a repetition of trespasses by the defendant where the complainant's title is admitted or established in an action at law and where the trespasses are such that the amount recoverable as damages in an action at law would be so small as to be disproportionate to the vexation and expense of the action.

2. CEMETERIES—*owner does not, by laying out drives and selling lots, dedicate drives to public as streets.* The proprietor of a cemetery does not, by laying out the grounds in lots, blocks and driveways and selling lots for burial purposes, dedicate such driveways to the general public as streets, but the title and control of such driveways remain in the proprietor, subject to the right of the lot owners and their relatives and friends to use the driveways in reaching their lots.

3. SAME—*right of a lot owner in cemetery is not the same as that of a lot owner on a street.* The right of one who purchases a lot in a cemetery for burial purposes is more analogous to that of the purchaser of a pew in a church than to that of the purchaser of a lot abutting upon a street.

4. SAME—*proprietor of cemetery may maintain bill to enjoin repetition of trespasses.* The proprietor of a cemetery may maintain a bill to enjoin the repeated trespasses of the owner of an adjoining tract of land in tearing down the fence enclosing the cemetery and connecting and using the cemetery driveways as a means of access to the adjoining tract, which has been laid out for a new cemetery. (*Cragg* v. *Levinson,* 238 Ill. 69, followed.)

5. NAMES—*when the use of a similar name should be enjoined.* Where a cemetery which has been known for fifty years as the Mount Hope cemetery is taken over by a corporation organized under the name of "The Mount Hope Cemetery Association," the use of the name "The New Mount Hope Cemetery Association" by a subsequently organized corporation owning an adjoining tract of land, which it has laid out for a new cemetery and in which it is endeavoring to sell lots by holding out the idea that the new cemetery is a part of the old one, should be enjoined.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

RAY & DOBBINS, and H. I. GREEN, for appellant.

A. D. MULLIKEN, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the Mount Hope Cemetery Association, a corporation, against the New Mount Hope Cemetery Association, a corporation, Frank J. Webster, Warren G. Kennard and Wesley E. King, the officers of the defendant corporation, in the circuit court of Champaign county, to obtain an injunction to restrain the defendant corporation and its officers from tearing down and removing the boundary fence between the lands of the Mount Hope Cemetery Association on the west and the lands of the New Mount Hope Cemetery Association on the east, and to restrain the defendant corporation and its officers from trespassing upon the lots, blocks, avenues and driveways of the Mount Hope Cemetery Association, and to restrain the defendant corporation from using "The New Mount Hope Cemetery Association" as its corporate name. An answer and replication were filed and the case was referred to the master to take the proofs and report his conclusions. The master filed a report, in which he recommended that a decree be entered in accordance with the prayer of the bill, to which report the chancellor sustained exceptions and entered a decree dismissing the bill for want of equity, and the complainant has prosecuted an appeal to this court.

It appears from the record that in the year 1856 there was laid out and established by the owner of a tract of land situated adjoining the city of Champaign and Urbana, a cemetery, which since that time has been known as the Mount Hope cemetery; that prior to the year 1906

there had been laid out by the proprietors of said Mount Hope cemetery a number of additions to said Mount Hope cemetery; that in the year 1906 said Mount Hope cemetery was the principal cemetery located in the vicinity of the cities of Champaign and Urbana; that said Mount Hope cemetery and its additions are laid out into lots, blocks, avenues and driveways, one block thereof being dedicated for a soldiers' monument, and said cemetery is enclosed by fences and is reached from the principal adjoining streets and highways by gates; that a large number of lots have been sold by the proprietors of the Mount Hope cemetery in the original cemetery and in its several additions to different persons for burial purposes, and that numerous of said lots have been and are now utilized for burial purposes; that in connection with their burial lots the purchasers of lots have, from the time said cemetery and its additions were laid out and established, used the avenues and driveways in said cemetery as a means of access to and from their said lots; that in April, 1906, the complainant was incorporated as "The Mount Hope Cemetery Association of Champaign," for the purpose of taking over, and it did in that month take over from the then owners of said cemetery, the Mount Hope cemetery; that since that time, as had its predecessors in title for a period of fifty years, the complainant corporation has had the control and management of said Mount Hope cemetery, its avenues, drives, etc., and that shortly after the purchase of said Mount Hope cemetery by the complainant it laid out and expended about $9000 in putting in a system of water mains and hydrants in said cemetery grounds, building a chapel upon said grounds for the use of the purchasers of lots in said cemetery, and otherwise beautifying and improving said cemetery grounds; that from the establishment of said cemetery and its additions, the gates which furnished means of ingress to and egress from said cemetery grounds have been supplied with locks, and the gates

have been kept locked by the proprietors of said cemetery at such times as it was thought necessary to protect said cemetery grounds from trespassers or the trespassing of stock running at large and at such times as it would injure the grounds, avenues and driveways to be driven over by teams; that in the fall of 1906 the defendant corporation was organized, and it purchased a tract of land containing about ten acres situated immediately west of and adjoining the Mount Hope cemetery grounds, platted and improved it for cemetery purposes, and so laid out its avenues and driveways that they would connect with the avenues and driveways of the Mount Hope cemetery upon the east as the avenues and driveways of said cemetery have existed for many years prior to that time, and designated its grounds as "The New Mount Hope Cemetery," and advertised through the newspapers, and by circulars and other printed matter, that the avenues and driveways of the New Mount Hope cemetery connected with the avenues and driveways of the Mount Hope cemetery grounds, and by canvassers and otherwise commenced selling lots in the New Mount Hope cemetery; that on the west line of the Mount Hope cemetery grounds, as originally laid out, there was situated an avenue or driveway thirty-three feet in width, known as Cyprus street; that in about the year 1884, on the west line of said Cyprus street, the proprietors of the Mount Hope cemetery grounds planted a hedge fence, which, at the time of the trespasses hereinafter complained of, had grown to be a large hedge and formed a barrier to intruders on the west side of the grounds of the Mount Hope Cemetery Association; that after the defendant corporation had laid out and established its cemetery grounds and commenced selling lots, without the consent of the complainant corporation and against the protest of its officers, the defendant corporation, by its officers and agents, commenced to cut down and pull up, and did cut down and pull up, the hedge fence between its property and the property

246—27

of the complainant corporation, and scraped down the west side of Cyprus street to a level with the avenues and driveways on its property, and opened up and connected the avenues and driveways on its property with the long established avenues and driveways on the grounds of the Mount Hope Cemetery Association; that complainant thereupon erected a wire fence upon the west side of Cyprus street and blocked said avenues and driveways with hedge brush; that the defendants tore down and removed said wire fence and removed said barriers, and upon the same being rebuilt and replaced by complainant, the same were again broken down and removed by the defendants; that the defendants, nor either of them, have no interest in the lands within the enclosure of the Mount Hope Cemetery Association grounds, and the west line of said Mount Hope cemetery grounds, up to and including said hedge fence, had been in the possession of the original proprietors of the Mount Hope cemetery and their assigns for more than fifty years at the time defendants forcibly and repeatedly attempted to break down and obliterate the west boundary line of said Mount Hope Cemetery Association grounds, and that the complainant and its predecessors in title had been using the name "The Mount Hope Cemetery" as the name of said cemetery grounds under its control for more than half a century at the time the defendant corporation adopted as its name "The New Mount Hope Cemetery Association."

The questions raised upon this record for decision are, should a court of equity, under the facts disclosed by this record, by injunction protect the Mount Hope Cemetery Association in the enjoyment and possession of its property and in the enjoyment and use of its corporate name against the defendants? The theory of the defendants seems to be that the complainant and its predecessors in title, by platting said lands for cemetery purposes, establishing avenues and driveways thereon and selling lots for burial purposes according to said plat, dedicated the ave-

nues and driveways upon said plat to a public use, and that by reason of such dedication the defendant corporation had the right to remove the fence between its lands and the lands of the complainant for the purpose of connecting the avenues and driveways upon its lands with the avenues and driveways upon the lands of the complainant, and thereby furnishing access to the purchasers of lots in its cemetery through the Mount Hope cemetery grounds over its avenues and driveways with the streets and highways adjoining said Mount Hope cemetery grounds, although it has ample access to the streets and public highways adjoining its cemetery grounds without passing over the lands of the complainant. We cannot accede to this view. When a proprietor of land plats the same into lots, blocks, avenues and driveways for cemetery purposes and sells lots according to such plat for burial purposes, we think the proprietor of said cemetery retains the control over the cemetery grounds, subject only to the rights of the lot owners who have purchased lots, and that the title to the avenues and driveways in the cemetery remains in the original proprietor and his grantees, subject to the right of the purchasers of lots, including their relatives and friends, to use such avenues and driveways for the purpose of going to, returning from and visiting said lots; that the right of the purchaser of a lot in such plat is more analogous to that of a purchaser of a pew in a church than to the purchaser of a lot within a village or city abutting upon a street. *Seymour* v. *Page,* 33 Conn. 61; *Perkins* v. *Lawrence,* 138 Mass. 361; *McWhirter* v. *Newell,* 200 Ill. 583.

In the *Seymour case* the proprietor of a cemetery sought to change a grass walk to a gravel walk in one of the alleys of the cemetery. The complainant owned an adjoining lot which he claimed extended to the middle of the alley, and he relied upon the analogy of the interest of an adjoining lot owner in a platted city or village in an adjacent street to sustain his contention. The court said:

"But the cases are so unlike that the well settled rules of law which govern one are not applicable to the other. The controlling principle in both is the intention of the parties. * * * But, as heretofore stated, there is little or no resemblance between the conditions of a highway and a cemetery. In the latter the presumption is of a reservation rather than of a grant. There is, perhaps, no purpose to which wealth and art can be more properly appropriated than to embellishing the * * * cities of the dead. Beautiful creations of taste and genius relieve the external gloom and soften the repulsive association of the grave. In the preparations of a cemetery great skill and experience are required in preserving and adding to the natural advantages of localities, in grading, fencing, arranging walks, alleys, avenues and squares, and in planting and protecting trees, shrubbery, etc., and it is absolutely necessary, in order to insure regularity, permanence and progress, that these improvements should be under the control of one authority, acting in pursuance of matured and harmonious design. The very nature of the case excludes the supposition that each of the hundreds of individuals owning any right of burying in a particular spot can go beyond his specified limitation and derange this system, substituting deformity for beauty, as his own bad taste or temper may suggest."

In the *Perkins case* the purchaser of a lot in a public cemetery owned by the city of Lawrence sought to enjoin the city from building a wall and terrace in front of his lot and to require the premises adjoining his lot to be restored to the condition they were in at the time he purchased his lot. The court denied the complainant relief, and Mr. Justice Holmes, in disposing of the case, said: "It has been said that rights of burial in public burial grounds are peculiar and are not very dissimilar to rights in pews; that they are so far public that private interests in them are subject to the control of the public authorities having

charge of police regulations. (*Sohier* v. *Trinity Church,*
109 Mass. 1, 21; see Pub. Stats. chap. 82, sec. 15.) It has
been held in Connecticut, in the case of a sale by plan, that
the fee of the ways remained in the owner of the cemetery,
who retained general charge of the grounds. (*Seymour* v.
*Page,* 33 Conn. 61.) Finally, apart from any peculiar prin-
ciples applicable to cemeteries, it is to be borne in mind,
as a general proposition, that a reference to a plan does
not necessarily add to or enlarge the easements conveyed
by the deed. (*Williams* v. *Boston Water Power Co.* 134
Mass. 406, 416.) Taking all these considerations into ac-
count, we should hesitate to decide that the plaintiff could
have any standing in equity to complain of alterations made
in the ways in good faith, for the general improvement of
the cemetery and not impairing the value of his lot or his
means of access to it."

In the *McWhirter case,* on page 589, this court said:
"The Troy Grove cemetery is a public cemetery, having
been conveyed by the original trustees, who laid out and
platted the land embraced within it, to the village of Troy
Grove, formerly known as the village of Homer. As it is
a public cemetery, the sale of lots therein does not pass to
the grantees the title in fee to such lots, but thereby assures
to the grantee a license or easement therein for burial pur-
poses so long as the cemetery shall be used for cemetery
purposes. This license or easement becomes the property
of the family of the original grantee of the lot upon his or
her decease. The fee of the lots in such case remains in
the trustees of the cemetery, or their grantees, the trustees
of the village, in trust for the use and benefit of the as-
sociation and of the lot owners. 'Generally the right in
the lot is an easement, only,—the right to use it for burial
and cemetery purposes, but with no other interest in the
fee.'—Perley's Mortuary Law, p. 178; *Buffalo City Ceme-
tery* v. *City of Buffalo,* 46 N. Y. 503; *Hancock* v. *Mc-
Avoy,* 151 Pa. St. 464."

In this case the defendant corporation and its officers have no interest in the Mount Hope cemetery, its avenues or driveways or public grounds, nor do they in any sense represent the public or the lot owners. In attempting, therefore, to intrude upon the grounds of the Mount Hope Cemetery Association by breaking down and removing the fence upon the west side of said cemetery grounds and by attempting to level down the west boundary of said Cyprus street, which was wholly located within the grounds of the Mount Hope Cemetery Association, and by inviting funeral corteges to pass through and over the grounds of the Mount Hope cemetery to and from the cemetery grounds of the defendant corporation adjoining the Mount Hope cemetery, and by representing that the avenues and driveways upon the defendant corporation's grounds were connected with the avenues and driveways on the complainant corporation's grounds, they were trespassers and wrongdoers.

It is said, however, that conceding the defendants were trespassers, a court of equity, in a case like this, is powerless to prevent, by injunction, the repetition of these trespasses upon the grounds of the Mount Hope Cemetery Association. In the case of *Cragg* v. *Levinson,* 238 Ill. 69, this court held a court of equity may enjoin a repetition of trespasses by the defendant where the complainant's title is admitted or has been established in an action at law, and where the trespasses are such that the amount recoverable as damages in an action at law would be so small as to be disproportionate to the vexation and expense of such action, thus rendering the remedy at law inadequate. There was no dispute as to the title of the Mount Hope Cemetery Association and its grantors, and it would not be possible in an action at law to recover damages in an amount which would adequately compensate the complainant for the wrong done it by the acts of the defendant corporation and its officers. We think, therefore, this case

falls clearly within the doctrine announced in the *Cragg
case.* This case differs, however, from the ordinary bill in
equity filed by a person on his own behalf to enjoin re-
peated trespasses to his land. Here the complainant holds
title to the land embraced within the confines of Mount
Hope cemetery, in part at least, burdened with an easement
in favor of the purchasers of lots within the limits of said
cemetery, and we think the doctrine well settled in this State
that injunction is a proper method by which to prevent a
trespass,—especially when such trespass is oft repeated,—
to protect grounds set apart and dedicated to cemetery pur-
poses. (*Trustees of the First Evangelical Church* v. *Walsh,*
57 Ill. 363; *Davidson* v. *Reed,* 111 id. 167; *Wormley* v.
*Wormley,* 207 id. 411.) While the bills asking for protec-
tion of such grounds have generally been filed by a lot
owner, we see no reason why the proprietor of a cemetery,
who represents all persons to whom lots have been sold,—
resident as well as non-resident owners,—cannot maintain
a bill for the purpose of restraining repeated trespasses to
real estate in which he retains an interest and which has
been dedicated by him as a place for the burial of the dead.
The complainant in this case has a two-fold interest in
the real estate comprised within the limits of Mount Hope
cemetery. It is the owner of a large number of lots in
said cemetery which it has not sold, and it is the owner
of the fee in the lots which have been sold for burial pur-
poses, and in the avenues, driveways and public grounds
which have been set aside for the use of the lot owners.
An action of ejectment or a suit for damages, in a case
like this, would afford the complainant no adequate rem-
edy. We think, therefore, this bill was properly filed by
the complainant to enjoin the defendant corporation and
its officers from removing the fence which formed a barrier
upon the west side of the Mount Hope cemetery grounds
and from in any way interfering with the lands situated
within the enclosure of said cemetery. If such relief can

not be granted in a case like this, then a cemetery associa-
tion similarly situated to the complainant may have its
property, upon which it has expended large sums of money,
together with much time and labor, in beautifying and
improving, taken from it or its value greatly lessened by
every land owner who happens to own property adjoining
it, tearing down and destroying the fences surrounding the
cemetery and making his land a part of the cemetery.

The name "The Mount Hope Cemetery" had been in
use by the complainant and its predecessors in title from
the time the Mount Hope cemetery was established, in
1856. The grounds designated as Mount Hope cemetery
had been improved and beautified by the complainant and
its predecessors in title at a large expense. The defendant
corporation was holding out to the people who lived in the
vicinity of Mount Hope cemetery that its lands were con-
nected with the avenues and driveways of the Mount Hope
cemetery, and it was endeavoring to sell lots in its ceme-
tery by reason of its proximity to Mount Hope cemetery,
and by the supposed advantages which would accrue to the
purchaser by reason of the fact that, in effect, the lot which
he was purchasing formed a part of Mount Hope cemetery.
Had the defendant corporation assumed the name "Mount
Hope Cemetery" instead of "New Mount Hope Cemetery,"
we think all would agree that it would have no right to use
that name as against the Mount Hope cemetery, and we
think it equally clear that the defendant corporation cannot
obtain the right to use said name by prefixing thereto the
word "New," and thereby make its name "New Mount
Hope Cemetery Association" instead of "Mount Hope Cem-
etery Association." The word "New" does not change the
name.

In *International Committee of Young Women's Chris-
tian Ass'ns* v. *Young Women's Christian Ass'n of Chicago,*
194 Ill. 194, it was held that there was such a similarity
in names between the two associations that an injunction

should issue.    In *Hopkins Amusement Co.* v. *Frohman,* 202 Ill. 541, it was held that the name "Sherlock Holmes" was infringed by the use of the name "Sherlock Holmes, Detective."    And in *Gamble* v. *Stevenson,* 10 Mo. App. 581, that the words "What Cheer" (the name of a restaurant) were infringed by the use of the name "New and Original What Cheer Restaurant."    And in *Newman* v. *Alvord,* 35 How. Pr. 108, that the name "Akron Water Lime" was infringed by the use of the name "Onandaga Akron Cement and Water Lime."    (See, also, *Koebel* v. *Chicago Landlords' Protective Bureau,* 210 Ill. 176.)    In *Lee* v. *Halley,* L. R. 5 Ch. App. Cas. 155, Lord Justice Giffard said:    "The principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has an established trade and carries it on under a given name, that some other person should assume the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name.    *    *    *    I think this injunction has been properly granted upon the well known principles of this court, which are applicable to all cases of this description, viz., that it is a fraud on the part of a defendant to set up business under such a designation as is calculated to lead, and does lead, other people to suppose that his business is the business of another person."    This statement of the law was quoted with approval in the case reported in 194 Ill. at page 200.

There is evidence in this record that the mail of the two corporations has been confused in the post-office, and it must be, we think, to the most casual observer apparent that the public would be likely to be confused and deceived into believing that purchasers of lots were dealing with the complainant when they were buying lots of the defendant corporation.    We can conceive of no reason, under the conditions detailed in this record, why the defendant cor-

poration should have adopted a name so similar to that of the complainant corporation's name unless it was done for the purpose of deriving profit from the sale of its lots, based upon the established name and business of the complainant corporation.

The decree of the circuit court will be reversed and the cause will be remanded to that court, with directions to enter a decree in accordance with the prayer of the complainant's bill.

*Reversed and remanded, with directions.*