DUNBAR, Appellant, VS. OCONOMOWOC CEMETERY ASSO-
CIATION, Respondent.

*January 13—February 9, 1926.*

*Cemeteries: Alleys and passageways: Easements: Rights of lot-
owner: Permitting burials in passageways: Action to prevent
interference with vested rights.*

1. When a cemetery association, pursuant to secs. 157.07, 157.08,
   and 157.10, Stats. 1925, platted its cemetery into lots, avenues,
   and alleys, it dedicated the burial lots for burial purposes
   only, and the avenues and alleys for passageways for the
   use of those interested in the lots and the public in general
   as means of access to the lots. p. 166.
2. While the association retains the fee in the alleyway, the lot-
   owner obtains an easement for the free and unobstructed use
   of the same for passage purposes. p. 168.
3. When a lot adjoining an alleyway, both being designated on
   the plat, has once been sold for burial purposes, each serves
   a distinct and definite purpose, and such purpose cannot be
   interfered with or modified by the owners of the cemetery, or
   by other persons, without affecting the vested rights of the
   lotowner. p. 168.
4. The association, by selling a lot for burial purposes, held out
   to the purchaser (since deceased) an inducement, which ap-
   peared from the plat, that the alleyway to the lot could at
   all times be used as a passageway without violating the sen-
   sibilities of his family and others; and by extending a permit
   to an adjoining lotowner to use a portion of the alleyway for
   burial purposes the association violated the rights of those
   who succeeded to the lot of the deceased. p. 169.

APPEAL from a judgment of the circuit court for Wau-
kesha county: C. M. DAVISON, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Shannon & Cronin*
of Oconomowoc, and oral argument by *Timothy T. Cronin.*

For the respondent there was a brief by *Derse & Rasmus-
sen* of Oconomowoc, and oral argument by *A. G. Derse.*

DOERFLER, J. The defendant is a cemetery association,
organized and existing under the laws of the state of Wis-
consin. Sec. 157.07 of the Statutes of 1925 provides:

"The board shall survey and plat such portions of the
lands as may from time to time be required for burial, into

lots, drives and walks, and record map thereof in the office of the register of deeds. For failure to do so, each trustee of an association shall forfeit twenty-five dollars to the association."

Sec. 157.08 provides:

"(1) After the map is so recorded, the board may sell and convey platted lots, expressly restricting the use to burials, and upon such other terms, conditions and restrictions as the board directs."

Sec. 157.10 provides:

"While any person is buried therein, a lot shall be inalienable without the consent of a majority of the board, and on the death of the owner shall descend to his heirs; but any one or more of such heirs may convey to any other heir his interest therein. No corpse shall be interred in a lot except the corpse of one having an interest therein, or a relative, or the husband, or wife of such person, or his or her relative, except by the consent of all persons having an interest in the lot."

These statutes, substantially in the form as above set forth, were in force under the Revised Statutes of 1878.

One Joshua Dunbar before his death acquired the rights from the defendant, for burial purposes, in lot number 210 in block E of said cemetery, and some time thereafter, and long before the alleged cause of action herein accrued, died, and his body was interred in said lot. The plaintiff is a daughter of the deceased, and after the death of her father assumed charge of said burial lot and has paid the cost of maintenance and upkeep of the same. To the east of said lot, and separated therefrom by an alleyway four feet in width, is located lot number 211, which is known as the Hungerford lot. In 1923 the space available for graves on said Hungerford lot was exhausted, and in order to permit the burial of a body of one of the Hungerford family the defendant permitted a burial in that portion of the said four-foot alleyway which adjoins the Hungerford lot and which runs between such lot and the Dunbar lot. The plaintiff

protested such burial without avail, and continued to make such protest up to the time of the commencement of this action. It also appears that after the burial in the alleyway those interested in the Hungerford lot placed at the head of the grave in the alleyway a large urn which interfered with the free use of said alleyway for passage purposes.

The plaintiff herein insists that the *Cemetery Association* had no right to appropriate any portion of this alleyway for burial purposes; that those interested in the Hungerford lot have no interest or title in the alleyway excepting only such use thereof as may be necessary for passage purposes; and that the burial of the body in such alleyway and the placing and maintenance of the urn thereon constitute an unwarranted and unjustifiable appropriation of the alleyway for burial purposes.

It also appears that the defendant had for a considerable period prior to 1923 authorized burials in alleyways like the one herein involved, wherever lots had been fully appropriated by graves and where it became necessary to appropriate the alleyways in order to permit members of the family to be buried in close proximity to each other.

When the *Cemetery Association,* pursuant to the requirements of the statutes above set forth, platted its cemetery into lots, avenues, and alleys, it dedicated the burial lots for burial purposes, and for such purposes only, and the avenues and alleys for passageways for the use of those interested in the lots, and the public in general, as a ready means of access to the lots.

In *Burke v. Wall,* 29 La. Ann. 38, it was held, as is shown by the syllabus, as follows:

"Where a lot in a cemetery is sold with reference to a certain *plan,* on which plan appears a certain avenue, leading up to or close beside the lot, affording a convenient highway to and from it, that avenue becomes a servitude in favor of the lot, and cannot be legally obstructed."

Dunbar v. Oconomowoc Cemetery Asso. 189 Wis. 164.

"The purchaser of a cemetery lot, whether he acquire an absolute or qualified property therein, is entitled to the equitable remedy of injunction, to protect him in the full enjoyment of the lot."

In *Seymour v. Page,* 33 Conn. 61, it is held:

"Where the proprietor of grounds, laid out for use as a public cemetery, makes a conveyance of a burial lot, no interest in the alleys which separate it from other lots, except a right of way, passes to the purchaser, unless particularly expressed in the deed."

In *Evergreen Cemetery Asso. v. New Haven,* 43 Conn. 234, it is said on page 243:

"The same land cannot properly be used for burial lots and for a public highway at the same time. The two uses are inconsistent with each other, and the one practically excludes the other." See, also, 5 Ruling Case Law, 241.

In *Mount Hope Cemetery Asso. v. New Mount Hope Cemetery Asso.* 246 Ill. 416, 92 N. E. 912, it is said, as appears from the syllabus:

"The proprietor of a cemetery does not, by laying out the grounds in lots, blocks, and driveways and selling lots for burial purposes, dedicate such driveways to the general public as streets, but the title and control of such driveways remain in the proprietor, subject to the right of the lot-owners and their relatives and friends to use the driveways in reaching their lots."

"The right of one who purchases a lot in a cemetery for burial purposes is more analogous to that of the purchaser of a pew in a church than to that of the purchaser of a lot abutting upon a street."

There is not much law applicable to the subject in the books, due evidently to the delicate and sensitive nature of the subject matter and to the disinclination of persons whose rights are involved to litigate in regard to the same. Quotations from the opinions above set forth, however, appeal

to us as sound law, and we adopt them in so far as they are applicable to the questions involved in this case.

It is argued by the defendant that after the burial of the body in the said alleyway the surface of the same was reconstructed so that such way can be used to all intents and purposes as it had been prior to the burial. On the other hand, it is contended by the plaintiff that, leaving out of consideration the placement of the urn, while no actual physical obstruction remains, nevertheless such way is no longer useful or serviceable as a passageway by reason of the prevailing sentiment existing among the great mass of people not to pass over a spot where a dead body is interred. The attitude thus expressed is quite common and general and is founded upon the laudable desire to manifest a proper respect for those who are deceased.

We can find no precedent in the books in which the identical question has been presented or decided and counsel have cited none. However, the quotation from the case of *Evergreen Cemetery Asso. v. New Haven, supra,* is closely analogous, and the doctrine there laid down seems clearly applicable to the instant case, and rules this case. While the *Cemetery Association* retains the fee in the alleyway, the lotowner obtains an easement for the free and unobstructed use of the same for passage purposes. The use of a lot for burial purposes is inconsistent with a public use for passage purposes; and the use of an alleyway for passage purposes is inconsistent with its use for burial purposes. When a lot adjoining an alleyway has once been sold for burial purposes, such lot and alley being designated on the plat, each serves a distinct and definite purpose, and such purpose cannot be interfered with or modified by the owners of the cemetery, or by any other person or persons, without affecting the vested rights of the lotowner. To the extent that the ownership of burial lots differs materially from the rights of lotowners in general, there arises also a difference in the law applicable to the subject. It may be true that the

passageway, barring the placement of the urn, is now phys-
ically unobstructed, and that it may be used by those in-
terested to the fullest extent as a passageway; yet there
exists that all-prevailing sense of propriety within the human
race to pay proper respect to the dead and to not ruthlessly
trample on and pass over the spot where a body has been
buried. When the *Cemetery Association* sold lot 210 to the
deceased, Dunbar, it held out to him an inducement, which
appeared from the plat, that the alleyway could at all times
be used as a mere passageway without violating the sensibil-
ities of the members of his family, his friends, and others,
and the permit extended by the defendant to those who had
control of the Hungerford lot to use any portion of this
alleyway for burial purposes constituted a clear violation
of the rights of those who succeeded to the Dunbar lot.

The learned circuit judge bases his opinion upon *Hollman
v. Platteville,* 101 Wis. 94, 76 N. W. 1119, and *Carter v.
Avoca,* 197 Iowa, 670, 197 N. W. 897. A casual reading
of these cases is persuasive that they have no application
whatsoever to the issues involved in this case. From the
evidence herein presented it is clear that the rights of the
plaintiff have been invaded by the *Cemetery Association*
and by those who are in control or who are the owners of
the burial rights in the Hungerford lot.

The plaintiff and the defendant, however, are not the only
ones interested in the issues involved in this case. Those
who have the control of the rights in lot number 211 are
also vitally interested, and they have not been made parties
hereto and have not had their day in court. It is not im-
possible that the plaintiff, who has control of lot 210, has
been guilty of acts which would estop her from asserting
her rights herein, and this cannot be determined unless all
parties interested are before the court.

We therefore conclude that the judgment of the lower
court must be reversed, and that the cause be remanded to
the lower court with directions that those who control or

are interested in lot 211 be impleaded, so that the rights of all parties may be before the court and be determined.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.