Argued October 17, affirmed as modified December 31, 1956

# CITY VIEW CEMETERY ASSOCIATION *v.* SALEM MAUSOLEUM & CREMATORIUM, INC., ET AL

305 P. 2d 379

*Peter M. Gunnar* and *Allan G. Carson,* Salem, argued the cause for appellant. On the briefs were Peter M. Gunnar and John H. Carson, Salem.

*Brazier C. Small,* Salem, argued the cause and filed a brief for respondents.

Before WARNER, Chief Justice, and ROSSMAN, PERRY and McALLISTER, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a declaratory decree of the circuit court, which is adverse to the plaintiff. The latter is the owner of a cemetery. The defendants are the owners of a mausoleum and crematorium which was constructed within the plaintiff's cemetery upon land purchased from it. The complaint sought declarations as to (1) whether the

defendants are required to contribute to the expenses incurred by the plaintiff in the maintenance of the cemetery roads, and (2) whether a small area in the cemetery upon which the mausoleum faces, and within which the defendants have erected a barricade, is a part of a public road. The defendants contend that (1) they are not required to contribute to the maintenance of the cemetery roads except one to which the witnesses referred as the "unnamed road"; (2) the barricade stands upon a parcel of land which the plaintiff conveyed in 1914 to Portland Mausoleum Company, a predecessor in title to Lloyd T. Rigdon, who was a defendant at the time the suit was filed and who died after entry of the decree.

The plaintiff-appellant's brief states the issues submitted by the appeal in this way:

"* * * Plaintiff contends that defendants are liable for half the expense of road maintenance necessitated by ordinary user of the roads by defendants and for all expense necessitated by excessive user of the roads by defendants, and also that defendant should be required to remove the barricade. On the other hand defendants contend they have no liability for road maintenance and have a good right to maintain the barricade. The trial court held that defendants are entitled to maintain their barricade and that defendants are not liable for the past, present or future expense of the ordinary maintenance of the roads, and as to these issues it dismissed plaintiff's complaint with prejudice. As to the expense caused by extraordinary user, the trial court held that plaintiff is not entitled to recover in this proceeding and that the complaint, as to this matter, was dismissed without prejudice to any remedy by an action at law."

The defendant, Salem Mausoleum & Crematorium, Inc., was incorporated September 13, 1927, although

at that time it had a different name. We shall hereafter refer to it as the Mausoleum Company. In the circuit court the aforementioned Lloyd T. Rigdon, as trustee for Mt. Crest Abbey Mausoleum, was a defendant. Following his death an order was entered substituting for him as trustee-defendant Magnolia Rigdon, Arthur W. Smither and Brazier C. Small, who are the executors of the will and estate of the deceased and are also trustees of a testamentary trust mentioned in his will. Later, a motion to dismiss the appeal was presented on the ground of absence of proper parties defendant. It was denied. The respondents' (defendants') brief appears to be oblivious of the fact that the motion to dismiss was denied and reargues it. However, the motion was denied.

The following sketch, which is not in scale, represents the part of the cemetery with which this case is concerned.

The plaintiff's cemetery is in Marion county. Its principal thoroughfare is Center avenue, 33 feet wide, and running east and west. Those who wish to go to the defendants' mausoleum generally drive down Center avenue to Summit avenue, a distance of about 1200 feet, where they turn to the left and, after going about 150 feet on Summit, are in front of the mausoleum. Upon leaving they may reverse the course by which they came or proceed a short distance on Holly avenue to Veterans' Circle, turn north into Sedgwick, or, instead of turning at that point, they may continue on Holly to the city street shown on the sketch. It is seen from the foregoing that the patrons of the mausoleum have occasion to use Center, Summit, Holly and Sedgwick avenues. By returning to the sketch, it will be noticed that the mausoleum property upon

its west side abuts upon a roadway which we have
designated an unnamed road. We so denoted it because

it remains unnamed. It is 24 feet wide and affords
ingress to and egress from the mausoleum as well as
the cemetery. Center avenue has been paved, but the

pavement is inadequate to the destructive effects of heavy vehicles. Sedgwick, Center, Holly and the unnamed road have been treated with a coating of crushed rock.

Prior to 1893 the plaintiff acquired the land which constitutes City View Cemetery and in that year filed the original cemetery plat. The latter was for only a part of the grounds which today constitute the cemetery. It consisted of six blocks and lies immediately north of the area represented by our plat. The six blocks were designated with the letters A, B, C, D, E and F. They were separated by thoroughfares such as Center and Sedgwick. Each block was divided into burial lots separated by numerous minor passageways. The plat of 1893 contained the following entry:

"* * * and said association for convenience in making deeds to lots, as on said plat appears, adopt the same as correct. And further for the convenient use of the said grounds, for the purpose of a burrying [sic] ground for the dead, the driveways, alleys, and walks are set apart for the use of the parties purchasing grounds in the tract of land designated on said plat, and for the use of visitors to said grounds, subject to all reasonable rules, that the association may from time to time adopt, restraining the use of the same at all times and under all circumstances, which right is expressly reserved."

The area which is designated upon our sketch as mausoleum property is not located in any of the blocks which were shown upon the plat of 1893. The part of the mausoleum property which our sketch identifies as "original conveyance" (115 by 129 feet in size) is located partly in two blocks which formed a part of a plat which the plaintiff filed September 30, 1922, and entitled First Addition to City View Cemetery.

We will refer to it again later. The 1893 plat included the parts of Center avenue which are shown on our sketch. It also showed Sedgwick and Summit avenues, although it did not include the parts of them which are indicated upon our plat.

Laws 1882, page 34, section 8, which was in effect when the 1893 plat was filed, authorized cemetery associations to pursue the course which was taken by the plaintiff when the plat of 1893 was filed. It provided that organizations such as the plaintiff

"shall cause a plan of their grounds, and of all the lots by them layed out, to be made and recorded, such lots to be numbered by regular consecutive numbers."

Section 5 of the act authorized cemetery associations to sell lots by reference to the filed plat "if intended to be used exclusively for burial purposes." The act now in effect, Oregon Laws, 1947, chapter 565, section 20, (ORS 97.320) amplifies the provisions of the earlier act.

February 17, 1914, the plaintiff conveyed the parcel identified upon our plat as "original conveyance" to Portland Mausoleum Company. Through mesne conveyances it passed to the aforementioned Lloyd T. Rigdon, as trustee. We have stated that the original conveyance was not a part of the tract shown in the plat filed in 1893. It was a part of an area shown in a plat filed September 30, 1922, and denominated as First Addition to City View Cemetery. Therefore, when it was conveyed to Portland Mausoleum Company in 1914 it was not a part of any cemetery grounds and was not subject to any of the restrictions which are imposed upon property which is platted for burial purposes. The barricade to which the plaintiff objects stands on the property just mentioned.

The deed of February 17, 1914, which brought to the defendants' predecessor in title the parcel entitled "original conveyance," contained this provision:

"It is hereby expressly covenanted by and between the parties hereto that said land hereby deeded shall be used for the purpose of entombment and burial of the dead and for use for the erection of a mausoleum building thereon * * *."

The deed continued:

"Also the following described real property, to-wit: A perpetual and permanent right of way for ingress and egress by any kind of vehicle or foot passage, along, over and upon Center Ave. * * *. Also a perpetual way for ingress and egress, along, over and upon the proposed extension of Summit Ave. in said City View Cemetery * * * it being the intention of the grantor herein, that the grantee, its successors and assigns shall have the right to use Center Ave. and the proposed extension of Summit Ave. for the purpose of ingress and egress to the mausoleum building now being erected by the party of the second part * * * for all necessary and useful purposes in connection with the use and occupancy of said mausoleum building forever."

It will be noticed that in 1914 when the original conveyance was made to the Portland Mausoleum Company, the parcel conveyed was surrounded by other land owned by the plaintiff. The surrounding land was not devoted to cemetery purposes. Therefore, the "right of way" which was granted by the deed was in the nature of a way of necessity. The deed of 1914 required the plaintiff to furnish the mausoleum company a water supply free of charge.

September 30, 1922, the plaintiff filed the plat entitled First Addition to City View Cemetery which we have mentioned. Our drawing is a crude reproduc-

tion of that plat. The latter included blocks I and J, which are indicated upon our sketch. The property which the plaintiff conveyed to the Portland Mausoleum Company February 17, 1914 (original conveyance) constituted in part the southwest corner of block J and the northwest corner of block I. Another part lay astride the area which the plat designated as Summit avenue, and still another part constituted the westerly extension of Holly avenue. We see from the foregoing that when the plaintiff recorded the plat of 1922 (entitled First Addition to City View Cemetery) it did not own the parcel which constituted the original conveyance, for it had conveyed that eight years prior thereto to the Portland Mausoleum Company. That parcel, therefore, was not a part of the area represented by the plat which the plaintiff recorded September 30, 1922.

Even though the plat filed September 30, 1922, had no restrictive effect upon the property which the plaintiff conveyed to Portland Mausoleum Company February 17, 1914, the plat and the entries thereon are material upon other issues of this case. The plat of September 30, 1922, shows Center, Holly, Sedgwick and Summit avenues. It says: "The streets and alleys are hereby dedicated for public use forever."

July 11, 1927, the plaintiff conveyed to Lloyd T. Rigdon, aforementioned, a parcel, 50 by 143.41 feet in size, immediately west of the one which we have spoken of as "orginal conveyance." October 6, 1927, the plaintiff executed a grant which stated that it

"has bargained, sold and quitclaimed * * * unto Lloyd T. Rigdon the following described premises, to-wit:

"A perpetual and permanent right of way for ingress and egress by any kind of vehicle or foot

passage, to be used in conjunction with the owners of Mt. Crest Abbey Mausoleum, along, over and upon Center Avenue * * *.''

The instrument also granted a right of way ''upon the proposed extension of Summit Avenue.'' ''The proposed extension'' lay between the mausoleum property and Center avenue. Mt. Crest Abbey Mausoleum was the name of an entity which operated the mausoleum. May 3, 1929, Rigdon conveyed the tract just mentioned and the rights of way to Mt. Crest Mausoleum Company, which later, through change of name, became the defendant mausoleum company. August 16, 1935, the plaintiff conveyed to the defendant mausoleum company a strip 3.2 by 143.41 feet immediately west of the two tracts to which we just referred. August 9, 1945, the plaintiff conveyed to defendant mausoleum company a tract immediately west of the three we have mentioned. This conveyance completed the property which is identified upon our plat as the mausoleum property. The deed last mentioned granted ''a perpetual right of way for ingress and egress along, over and upon the streets, avenues and roadways of the grantor.''

October 19, 1945, the plaintiff and the mausoleum company signed a paper entitled Agreement which designated the plaintiff as ''the first party'' and the mausoleum company as ''the second party.'' It stated:

''Both parties mutually desire to arrange for roadways for the purpose of ingress and egress to their respective properties and for additional water capacity for use on their said properties.''

The instrument detailed with particularity the undertakings of the parties. It first enumerated in separate, numbered paragraphs the promises of the plaintiff

and then employed the same method in setting forth those of the mausoleum company. We will now mention the promises which are material. Since the promises in regard to water supply are not relevant to the issues before us, we pass them by, with the exception of taking note of the fact that the paper made provision that each party should pay one half of the cost of the new work required to assure the improved supply. Referring to the thoroughfare which we have denominated as the unnamed road, the paper bound the plaintiff

"(4) To pay one-half of the cost of improving and maintaining a twenty-four (24) foot roadway extending from Center Avenue to and past the west line of the property now being purchased by second party from first party, a total distance of approximately two hundred (200) feet."

It then continued with this provision:

"(5) That second party shall have a perpetual right of way for ingress and egress to second party's property along and over first party's streets and avenues now existing or hereafter established."

Then the instrument recited the covenants of the mausoleum company, which included the following:

"(4) To pay one-half of the cost of improving and maintaining a twenty-four (24) foot roadway extending from Center Avenue to and past the west line of the property now being purchased by second party from first party, a total distance of approximately two hundred (200) feet."

Unlike the agreements which were made in regard to "improving and maintaining" the unnamed road and improving the water supply, the instrument did not require the mausoleum company to pay any part of the cost of improving or maintaining the "streets and

avenues'' in the cemetery over which it gave the mausoleum company ''a perpetual right of way.''

Lest mention of the many deeds of conveyance prove confusing, we explain that title to the mausoleum property reposed in Lloyd T. Rigdon, as trustee, to the portion which is identified upon the plat with the term ''original conveyance'' and in the Salem Mausoleum & Crematorium, Inc., to the other three parcels. Since the suit submits no issue in regard to title, we have omitted mention of some details.

December 24, 1927, the plaintiff recorded a plat entitled ''2nd Addition to City View Cemetery.'' It contained no representations of streets, blocks or lots. April 21, 1928, the plaintiff recorded a plat entitled ''3rd Addition to City View Cemetery.'' It showed parts of Summit and Center avenues. One of its entries stated: ''The streets and alleys are hereby dedicated for public use forever.'' December 27, 1950, the plaintiff filed a plat entitled ''Resubdivision of 2nd Addition to City View Cemetery.'' It subdivided the area shown on the plat entitled ''2nd Addition to City View Cemetery'' into lots and blocks. It contained a representation of part of Center avenue. An entry upon it declared that the plaintiff ''does hereby dedicate the roads and streets for cemetery purposes only.'' January 23, 1951, the plaintiff recorded a plat entitled ''Subdivision of Section H City View Cemetery.'' It contained a representation of a part of Center avenue, and an entry upon it said: ''does hereby dedicate the roads and streets for cemetery purposes only.'' December 24, 1952, the plaintiff recorded a plat entitled ''Resubdivision of fraction of blocks I and L 1st Addition to City View Cemetery.'' An entry upon it stated: ''does hereby dedicate the streets for cemetery purposes only.''

The evidence indicates that the roads in the cemetery are constructed of light material and have an average life of only five years under normal cemetery traffic. In 1947 the mausoleum company began the erection of an addition to its edifice. In the fall of that year and in the succeeding spring heavy trucks, which brought to the premises ready-mixed concrete, used some of the cemetery streets, principally Center avenue and the unnamed road, with the result that those thoroughfares were damaged and needed extensive repair. The rebuilding cost the plaintiff $1,200.38. The defendants have refused to make any contribution toward that expenditure. The plaintiff does not claim that any intentional injury was done to the roads, nor does it contend that the trucks were operated in a negligent manner. We have mentioned the unnamed road and have quoted from the agreement whereby the plaintiff and the mausoleum company bound themselves to improve and maintain it. In 1947 it was improved and the mausoleum company paid one half of the cost. The succeeding winter's rain rendered the road virtually impassable, and in 1948 the plaintiff had the roadway repaired at an expense of $461.25. The mausoleum company has refused to discharge any part of that expense. It does not question the reasonableness of the amount.

The complaint, as has been noted, seeks the removal of a barricade. The latter was erected in 1947 by the mausoleum company at the place indicated upon our plat. It stands upon the property which was conveyed in 1914 to Portland Mausoleum Company, predecessor in title to the defendants. As we shall see when we analyze further the contention about the barricade, the plaintiff relies largely upon prescription.

So far as we can ascertain from the record, the

plaintiff has always paid for the construction and maintenance of the cemetery roads. If it ever before looked to the mausoleum company for any contribution toward those expenses, no witness mentioned the incident.

For present purposes the foregoing will serve as a statement of the facts.

■ The parties to this case appear to regard the cemetery thoroughfares which we have mentioned as public roads. The appellant's brief refers to them as "public, county roads," "public roads" and "county roads." The respondents' brief takes the same course and speaks of them as "public roads"; it states that they "have been constantly and continuously used and traveled by the public as public roads for many years." The evidence discloses no substantial use of the thoroughfares for any purpose except that of funerals and by those who visit the cemetery to decorate graves and crypts. Both the plaintiff and the defendants deem that ORS 368.550 governed the plats which the plaintiff filed. That section of our laws says:

> "Whenever any person owning lands in any county and not within the limits of any incorporated city or town presents to the county court or files as provided by law any map or plat of any town or addition therein dedicating to the public as highways, roads, streets or alleys, any of the lands and the map or plat is accepted or approved by the county court or other public officer of the county, such highways, roads, streets or alleys shall be public highways and be open to public use and travel."

It is clear that the plaintiff, in filing the several maps which we have described, was not attempting to plat "any town or addition" thereto. Each map bore

a caption in large letters, reading "City View Cemetery." The inscription appearing upon the one filed in 1893 said:

"This agreement and foregoing paper, is the plat of the City View Cemetery, which is recorded at the instance of the officers of the City View Cemetery Association."

Later plats likewise proclaimed a purpose to dedicate ground for cemetery use. We do not believe that the plats were governed by ORS 368.550.

It was manifestly the plaintiff's purpose when it filed the plats to create a cemetery and additions thereto. We have taken note of the provision of Laws 1882 which was in effect in 1893 and which governed plats filed for cemetery purposes. The act now in effect (ORS 97.310 through 97.450) provides:

"Every cemetery authority, from time to time as its property may require for cemetery purposes, shall:

"(1) In case of land, survey and subdivide it into sections, blocks, plots, avenues, walks or other subdivisions and make a good and substantial map or plat showing them, with descriptive names or numbers."

"In case of a cemetery lot, the cemetery authority shall file the map or plat in the office of the recording officer of the county in which all or a portion of the property is situated, and it forthwith shall file for record in that officer's office a written declaration dedicating the property delineated on the plat or map exclusively to cemetery purposes."

"Upon the filing of the map or plat and of the declaration for record, the dedication is complete for all purposes, and thereafter the property shall be held, occupied and used exclusively for cemetery purposes."

■ Neither the early act of 1882 nor the present one (ORS 97.310 through 97.450) renders the cemetery thoroughfares public roads. The act of 1882 provided that the land of cemetery associations devoted to cemetery purposes should be exempt "from any appropriation to public purposes, for the sole purpose of a cemetery." ORS 97.330, as we have seen, declares that all of the property represented upon the recorded plat "shall be held, occupied and used exclusively for cemetery purposes." It makes no distinction between the parts which the plat portrays as thoroughfares and the other parts which are used for interment. Upon the recording of the plat "the property" represented by it is deemed appropriated "exclusively for cemetery purposes." The plats recorded by the plaintiff have representations, not only of such thoroughfares as Center and Summit, but also of numerous minor ones which lie between the lots into which the blocks are subdivided. Passageways of that kind are a common feature of cemeteries. It would be novel to find that those passageways are subject to public use and traffic. ORS 97.360 reveals a legislative belief that the public acquires no rights in cemetery thoroughfares, for it makes provision whereby the area shown upon the plat, including the thoroughfares, may be replatted even to the extent of converting the thoroughfares into burial lots.

Thoroughfares which are public or county roads are foreign to the purposes of a cemetery. Those who visit burial grounds seek privacy and seclusion. Public roads, with their volume of traffic made up in part of commercial vehicles and regulated in many instances by traffic control systems, would be out of place in a cemetery. A burial place, where the bereaved family utters a word of prayer and pays homage to the de-

ceased as his remains are lowered into the grave, is deemed by the reverent as a consecrated place. The nature of the service which it performs for society requires quiet, peace and solitude. Accordingly, one can readily understand why, from the earliest of times, Oregon legislation has deemed that cemetery thoroughfares were for those only who went to the cemetery to participate in funeral services or to visit and possibly decorate a grave.

*Cemetery Association v. Cemetery Association,* 246 Ill 416, 92 NE 912, presented a situation in which a newly created cemetery association constructed its thoroughfares in such a manner that they fitted onto the driveways of the plaintiff's cemetery. The plaintiff cemetery had been in operation since 1856 and had planted hedge fences at the ends of its driveways. When the defendant had completed its thoroughfares and had extended them so that they began at the spots where the plaintiff's ended, it tore down the hedge fences so that traffic could move through. It contended, so the court said, that

> "the complainant and its predecessors in title, by platting said lands for cemetery purposes, establishing avenues and driveways thereon and selling lots for burial purposes according to said plat, dedicated the avenues and driveways upon said plat to a public use, and that by reason of such dedication the defendant corporation had the right to remove the fence * * *."

In rejecting the contention, the court reviewed several decisions of other courts which, likewise, held that cemetery driveways are not public roads. For example, it quoted from *Seymour v. Page,* 33 Conn 61, wherein the plaintiff contended that since an adjoining city lot owner owns to the middle of the street, an owner

of a cemetery lot has a like interest in the adjacent cemetery thoroughfare. The Illinois court quoted as follows:

> " ' * * * But the cases are so unlike that the well settled rules of law which govern one are not applicable to the other. The controlling principle in both is the intention of the parties. * * * But, as heretofore stated, there is little or no resemblance between the conditions of a highway and a cemetery. In the latter the presumption is of a reservation rather than of a grant.' "

The Illinois decision, in holding that the plaintiff was entitled to injunctive relief against the destruction of the hedge fences, ruled:

> " * * * When a proprietor of land plats the same into lots, blocks, avenues and driveways for cemetery purposes and sells lots according to such plat for burial purposes, we think the proprietor of said cemetery retains the control over the cemetery grounds, subject only to the rights of the lot owners who have purchased lots, and that the title to the avenues and driveways in the cemetery remains in the original proprietor and his grantees, subject to the right of the purchasers of lots, including their relatives and friends, to use such avenues and driveways for the purpose of going to, returning from and visiting said lots; that the right of the purchaser of a lot in such plat is more analogous to that of a purchaser of a pew in a church than to the purchaser of a lot within a village or city abutting upon a street."

*Oak Park Cemetery v. Donaldson,* (Tex Civ App), 148 SW2d 994, states:

> "While it is true that the grantee of a burial lot in a deed of conveyance does not acquire a fee-simple title, but only acquires the lot limited to its intended burial purposes (11 C.J. 60; 14 C.J.S., Cemeteries, § 25; Brunton v. Roberts, 265 Ky. 569,

97 S.W.2d 413, 107 A.L.R. 1289; People v. Bloomington Cemetery Ass'n, 353 Ill. 534, 187 N.E. 455; Annotation, 67 L.R.A. 118), it is clear that such grantee is not the ordinary owner of an easement, and that 'his right to have the drives, walks, and approaches kept in repair does not depend upon the law of easements.' Houston Cemetery Co. v. Drew, 13 Tex. Civ. App. 536, 36 S.W. 802, 805. See Dunbar v. Oconomowoc Cemetery Ass'n, 189 Wis. 164, 207 N.W. 265; Sheean v. Carra, 145 La. 440, 82 So. 399.''

*Brunton v. Roberts,* 265 Ky 569, 97 SW2d 413, 107 ALR 1289, ruled:

"* * * Of lesser degree, yet substantial, is the property which the owner of the burial lot has in the avenues and driveways. It is the right to the free and unobstructed use in order to have access to his lot."

We take the following from 14 CJS, Cemeteries, p 87, § 28:

"The owner of a burial lot has the right to free and unobstructed access thereto and to the use of the necessary driveways and approaches to his lot. By platting a cemetery and selling the lots with reference to the plat, the association impliedly dedicates the avenues, alleys, and open places for the use of those interested in the lots, and this purpose must not be interfered with."

The same rule is stated in the following manner in 10 Am Jur, Cemeteries, p 510, § 34:

"The right of one securing an exclusive right of sepulture in a cemetery lot includes the right to visit, keep, and attend the graves of those interred there, under such reasonable rules as to the character of the work and the manner in which it shall be done as may be prescribed by the cemetery company. * * * Moreover, the right to visit and decorate a grave is not confined to the owner of the

lot. Persons entitled to visit, protect, and beautify graves must be accorded ingress and egress from the public highway nearest the cemetery at seasonable times and in a reasonable manner. Moreover, avenues and alleyways within a cemetery, which have been dedicated for use by persons interested in the lots and the public generally, must be kept open. A lot owner, at least, has the right to the free and unobstructed use of the alleys and driveways of the cemetery for the purpose of obtaining access to his lot."

■ One who acquires a lot in a cemetery does not become vested with the fee. *Mansker v. Astoria,* 100 Or 435, 198 P 199. The decision just cited termed the right which is granted by a cemetery deed as sui generis, and declared:

"* * * it is difficult to define or to describe such right when we use words which are usually employed in designating other rights possessing qualities in part similar and in part dissimilar to those inhering in the right of burial. One of the descriptions or definitions of the right of burial is as follows: The right of burial is a privilege or license to be enjoyed so long as the place continues to be used as a burial ground, subject to municipal regulation and control, and legally revocable whenever the public interest requires: * * *."

■ It must be evident that cemetery driveways are not public roads. The lot owner is not vested with a fee in his lot, and his rights in the thoroughfares are limited to those which afford him, his family and the friends of the entombed free access to the lot. Unlike an individual who possesses an easement, he has no interest in the land over which the thoroughfare has been constructed.

We observe from the foregoing that the defendants' situation, at least so far as title is concerned, is mate-

rially different from that of the lot owners. When the Portland Mausoleum Company acquired the original parcel of mausoleum property, the parcel was not a part of any cemetery grounds and the property was conveyed by warranty deed. Therefore, the grantee acquired the fee. However, as has been noted, the deed restricted the use of the property to burial and mausoleum purposes. So far as we can ascertain from the record, the other three parcels, later conveyed, and which, with the original, constitute the mausoleum property, had not been incorporated into the cemetery by recorded plat before they were conveyed to the defendants. In each instance, conveyance was made by warranty deed. Accordingly, the defendants possess the fee in the entire mausoleum property. They, however, are not lot owners and use their property for a purpose different from that of a lot owner who lowers into a grave the remains of a member of his family.

It may be that when the conveyance of 1914 was made and the restrictive words were written into the deed, the parties envisioned the day when the cemetery grounds would be extended and would virtually surround the mausoleum, thereby indicating in a graphic manner that cemetery and mausoleum were closely identified with each other in the mission in which they were engaged. Those facts possibly explain why the plaintiff made no effort to bind the defendants to contribute anything to the upkeep of the cemetery driveways upon the several occasions when, by written instruments, it acknowledged that the defendants should have the right to use the cemetery thoroughfares. Had the plaintiff subdivided into lots the parcels which it sold to the defendants and if it then had sold the lots to individuals, it would not have expected

the latter to contribute anything to the cost of maintaining the driveways. That, we assume, is one of the reasons why the plaintiff granted to the defendants the right to use the cemetery thoroughfares. We think that it wished to place them upon a basis of equality with the lot owners.

■ The plaintiff, in seeking to charge the defendants with one half the cost of maintaining the cemetery driveways, argues that the defendants have easements over those thoroughfares and that the aforementioned deeds of conveyance create the relationship of dominant tenant and servient tenant. Its brief speaks of the "dominant-servient tenancy relationship." If the argument is accepted, all of the cemetery roads which afford access to the mausoleum are subject to an easement in the defendants' favor. In that event, the defendants have an interest in the land represented by the roadways. Restatement of the Law, Property, § 450. If the defendants have an easement, then their interest in the land, according to the section of the Restatement just cited, "is not subject to the will of the possessor of the land." Further, in that event, the lot owners are secondary in right to the defendants, for the lot owners are interested in the roadways only to the extent that they are afforded access to the lots. Likewise, if the defendants have easements, the plaintiff has lost the right to change the course of the cemetery thoroughfares and vacate them if it becomes desirable to convert the roadways into lots. Our statute, as we have noted, permits a cemetery, under prescribed conditions, to vacate thoroughfares and convert their areas into cemetery lots. If the plaintiffs' argument is accepted, it has lost that right.

We do not believe that the statutes governing cemeteries, of which we have taken notice, empower cemetery

associations such as the plaintiff to grant easements over cemetery property. Those statutes demand that all of the cemetery thoroughfares should be available on equal terms to all lot owners, their families and those interested in the interred. We know of no statute which empowers cemetery associations to grant easements or to subject the lot owners to the preferred rights of others. It is our belief that the basis upon which the plaintiff depends to charge the defendants with bearing part of the cost of maintenance of the cemetery roads fails it.

Notwithstanding the statement just made, we believe that the mausoleum has the same right to use those parts of the cemetery driveways which provide ingress and egress as the lot owners. When the deed of 1914 was executed it limited the use of the conveyed property to burial and mausoleum purposes. It granted to the defendants' predecessor in interest "right of way for ingress and egress by any kind of vehicle or for passage, along, over and upon" the existing driveways. Since the two institutions are engaged in services which complement each other, we think that the rights in the driveways for those who visit the two places are the same. The rights possessed by the lot owner and the crypt owner in the driveways do not amount to an easement but they serve substantially the same purpose.

The foregoing rejects the contention that the defendants are required to bear one half the expense of maintenance of the cemetery driveways. The plaintiff, however, contends that when the crematorium was built in 1947 excessive use was made of Center and Summit avenues, thereby requiring the plaintiff to expend $1,200.38 for rebuilding. In seeking to recover that sum from the defendants, the plaintiff depends

largely upon the fact that the vehicles of the contractor, which brought building material to the premises were unsuited to the cemetery roads. But the plaintiff, in the instruments which it executed in 1914 and 1927, granted to the defendants the right to use the cemetery roads "by any kind of vehicle." The cemetery thoroughfares are private, not public, ways. If one gives to another the right to park "any kind of vehicle" upon his lot, he cannot complain if the other does so. He can only complain if an injury is inflicted through a willful, negligent or reckless act. The plaintiff presents no contention that any injury was done to the roadways in that way. Evidently when the land was sold to the Portland Mausoleum Company in 1914 the prospective structure was deemed so desirable by the plaintiff that the broad grant just quoted was given. We know of no means of deleting it from the instruments.

The plaintiff contends that Summit avenue extends from Center avenue through the area marked on our sketch "original conveyance" southerly to the south line of the cemetery grounds. We have mentioned the fact that before the plaintiff filed the plat which is entitled First Addition to City View Cemetery, it had conveyed the tract entitled "original conveyance" to Portland Mausoleum Company. At the time of the conveyance, the parcel just mentioned was free from all cemetery restrictions, and the plaintiff had not yet done anything toward the creation of that part of Summit avenue except to contemplate it. Accordingly, it could not later dedicate to cemetery purposes the parcel which it had conveyed to the defendants. The contention that the public has, by prescription, won a right of way across the parcel just mentioned lacks support in the evidence.

■ There remains for disposition only one contention. It is that the defendants should contribute to the maintenance of the unnamed road. The contract of October 19, 1945, bound the parties to share equally in the cost of improving and maintaining that road. The plaintiff, as we have seen, expended in the maintenance of the roadway $461.25. The reasonableness of that expenditure was established at the trial. The defendants have contributed nothing toward it. Judgment will be entered in the plaintiff's favor for one half of that sum.

It follows from the above that the decree of the circuit court must be affirmed, subject to the modification that the plaintiff is entitled to judgment in the sum of $230.62.